On respondent's motion to dismiss in 01-30172, A124813, appellant's appeal dated October 20, petitioner's responses to motions to dismiss dated November 8 and November 9, and reply to appellant's response to motion to dismiss dated November 22, 2004, appeal of judgment of dissolution of marriage dismissed October 5, 2005

In the Matter of the Marriage of

Kirsten McKINNEY,
*Appellant,*

*and*

Lloyd M. McKINNEY,
*Respondent.*

01-30172; A125509 (Control)

In the Matter of the Marriage of

Kirsten J. McKINNEY,
*Appellant - Cross-Respondent,*

*and*

Lloyd M. McKINNEY,
*Respondent - Cross-Appellant.*

01-30172; A124813

Kirsten J. McKINNEY,
*Appellant,*

*v.*

Lloyd M. McKINNEY,
*Respondent.*

01-30176; A124813
(Cases Consolidated)

120 P3d 921

George W. Kelly for motions.

Lorena Reynolds *contra*.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.

BREWER, C. J.

**BREWER, C. J.**

Wife filed a notice of appeal from a judgment of dissolution of marriage. Husband moved to dismiss wife's appeal for lack of jurisdiction on the ground that wife failed to timely serve him with a copy of the notice of appeal. We conclude that wife did not timely serve husband, grant husband's motion, and dismiss the appeal for lack of jurisdiction.

 We begin with a brief summary of the principles that govern the filing and service of notices of appeal. ORS 19.255(1) provides, in part, that "a notice of appeal must be served and filed within 30 days after the judgment appealed from is entered in the register." Timely service of the notice of appeal on the adverse party or parties is jurisdictional. ORS 19.270(2)(a). ORS 19.500 governs, in part, the service of "papers" in connection with appeals. That statute provides, in part:

> "Except as otherwise provided in this chapter, when any provision of this chapter requires that a paper be served and filed, the paper shall be served in the manner provided in ORCP 9 B on all other parties who have appeared in the action, suit or proceeding * * *."

ORCP 9 B authorizes service by "delivery," by mail, and by facsimile transmission:

> "Service upon the attorney or upon a party shall be made by delivering a copy to such attorney or party, by mailing it to such attorney's or party's last known address or, if the party is represented by an attorney, by telephonic facsimile communication device as provided in section F of this rule. Delivery of a copy within this rule means: handing it to the person to be served; or leaving it at such person's office with such person's clerk or person apparently in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at such person's dwelling house or usual place of abode with some person over 14 years of age then residing therein. * * * Service by mail is complete upon mailing."

Finally, ORS 19.260(2) provides:

> "Service of notice of appeal on a party, transcript coordinator or the trial court administrator, or service of a

petition for judicial review on a party or administrative agency may be accomplished by first class, registered or certified mail. The date of serving such notice shall be the date of mailing. Proof of mailing shall be certified by the party filing the notice and filed thereafter with the court to which the appeal is taken."

If a respondent does not timely receive the service copy of a notice of appeal, the appellant must demonstrate its proper mailing to establish adequate service. *Murrieta v. Brewster*, 328 Or 434, 438, 981 P2d 330 (1999); *Mullens v. L. Q. Development*, 312 Or 599, 607, 825 P2d 1376 (1992). The court resolves any factual issues necessary to the legal determination whether the notice of appeal was timely served. *Id.* at 608.

With those principles in mind, we find the following facts. The trial court administrator entered a general judgment of dissolution on April 20, 2004; thus, wife had until May 20 to serve the notice of appeal. Wife mailed the original notice of appeal to the State Court Administrator and mailed husband's service copy on the same day, May 19, 2004. The envelope containing the service copy of the notice of appeal was stamped "PARCEL POST." The State Court Administrator received the original notice of appeal on May 20, 2004.

Wife asserts, and husband does not dispute, that she mailed husband's service copy of the notice of appeal at the same post office facility where husband's post office box is located. Wife stated in an affidavit that "[t]he distance between the counter at which she purchased the postage and gave the letter to the clerk was less than twenty feet from the location of [husband's] post office box." However, the address on the envelope in which wife mailed the service copy contained the following two defects: (1) Husband's post office box number is 687, but wife transposed the last two digits on the letter and wrote "PO Box 678" and (2) the zip code for post office boxes located in that facility is 97339, but wife wrote "97333." In an affidavit in support of wife's position, the United States Postal Service customer service department supervisor for the postal facility at which wife mailed the envelope explained the effect of those two errors:

"Corvallis has three zip codes, 97330, 97333, and 97339. Post office boxes located at the post office are the only addresses with the 97339 zip code. It is common for people to use the incorrect zip code because of this situation. We routinely reroute mail addressed to the incorrect zip code for the post office boxes. It is reasonable for someone to expect that we would do this as part of our job delivering the mail.

"Each post office box in our branch has a number and the customer name is located at the opening of the box. This has been done to alleviate problems with delivering the mail. A clerk is assigned to each section of boxes and the clerk checks the name on the box against the name on the item of mail. Post office box 678 and 687 are in the same section. A transposed post office box number is the type of error that it would be reasonable to expect a clerk to catch and correct."

Husband does not deny that the service copy of the notice of appeal was deposited in his post office box on either May 19 or 20. Instead, he states that he actually received the service copy "[t]owards the end of May, 2004." In light of the postal service representative's statement and, because the postal service transmitted the original notice of appeal from Corvallis to Salem in one day's time, it appears that, notwithstanding the errors in the address on the service envelope, the postal service deposited the service copy in husband's post office box on either May 19 or May 20. However, there is no evidence that husband physically received possession of the service copy on or before May 20.

Husband asserts that wife's appeal must be dismissed because parcel post, the manner in which she served the notice of appeal, was not reasonably calculated to apprise him of the pendency of the appeal. Husband relies on this court's decision in *Harris and Harris*, 104 Or App 209, 799 P2d 699 (1990), *rev den*, 311 Or 166 (1991). In *Harris*, we construed *former* ORS 19.028(2) (1989), *renumbered as* ORS 19.260(2) (1997).[1] There, the service copy of the notice of appeal was addressed and mailed, presumably by first class mail, to the post office box for the trial court administrator, rather than to the respondent's attorney. After the time for

---

[1] Except for renumbering, ORS 19.260(2) is identical in all pertinent respects to *former* ORS 19.028(2).

filing a notice of appeal had expired, the respondent's attorney notified the appellant's attorney's office that the respondent's attorney had not received a copy of the notice of appeal. On the next day, the respondent's attorney received a copy of the notice of appeal. *Id.* at 211.

We described the issue as "whether sending a notice of appeal to the wrong post office box is 'service' " by mail for the purposes of the statute permitting service of the notice of appeal by "first class, registered or certified mail." *Id.* We noted that "surely, the legislature intended, by allowing service of notices of appeal by mail, that notices be mailed to the *correct* address." *Id.* (emphasis in original). We held that the service by mail provision had not been satisfied: "[B]ecause the defect here defeats the essential purpose of service—that it be reasonably calculated to give notice—appellant did not obtain service in a timely fashion." *Id.* at 214. We explained further that actual notice of an appeal is not a substitute for service:

> "Defendant's actual notice of an action does not make service adequate under ORCP 7, unless the summons is served in a manner reasonably calculated to apprise the defendant of the existence and pendency of an action against him. *Baker v. Foy,* 310 Or 221, 230, 797 P2d 349 (1990), *citing Jordan v. Wiser,* 302 Or 50, 60, 726 P2d 365 (1986). Likewise, respondent's attorney's knowledge that an appeal had been filed does not make the attempted service of the notice of appeal adequate under ORS 19.028(2), because the notice was not served in a manner 'reasonably calculated' to apprise respondent of the pendency of the appeal."

*Id.* at 213 n 5.

The short answer to husband's reliance on *Harris* is found in the Supreme Court's recent decision in *McCall v. Kulongoski,* 339 Or 186, 118 P3d 256 (2005). In that case, the Supreme Court considered the statutory requirements for mail service of notices of appeal and their concomitant effect on appellate court jurisdiction in Oregon. The respondents also relied on the above-quoted passage from *Harris,* which drew parallels between the service of notices of appeal and the service of summonses under ORCP 7 D. The Supreme Court rejected that argument:

"The statutes controlling service of appeal notices, however, are separate and distinct from the statutes controlling the service of summonses. That is because the act of filing and serving a notice of appeal fulfills a different purpose than a service of summons. While the latter grants a trial court personal jurisdiction over the party served, the former gives an appellate court jurisdiction over the issue on appeal, to the exclusion of the lower court. *State v. Branstetter,* 332 Or 389, 403, 29 P3d 1121 (2001). It is not surprising, then, that different statutes also control service for that part of the appellate process. Although the statutes devoted to Oregon appeals—set out in ORS chapter 19—ultimately refer readers to provisions in the Oregon Rules of Civil Procedure for the correct procedures regarding appellate service, those provisions are not found in ORCP 7. Instead, ORS 19.500 mandates that appellate service be carried out according to ORCP 9 B."

*McCall*, 339 Or at 192.

The question remains whether wife properly accomplished service. *McCall* directs us to the correct answer to that question as well. In that case, the appellant attempted to serve a notice of appeal on the respondents' attorney by mail. However, the appellant mailed the notice of appeal to an address from which the attorney had moved more than a year earlier. The court held that the attempted service was ineffective:

"Under ORS 19.240, a key component in the process of commencing an appeal requires serving appellate notice on the entities designated by statute to receive notice. Among those entities are the parties that previously have appeared in the action[.]

"* * * * *

"One method of serving parties with notice is by mail. ORS 19.260(2) provides, in part:

" '*Service of notice of appeal on a party * * * may be accomplished by first class, registered or certified mail. The date of serving such notice shall be the date of mailing.*Proof of mailing shall be certified by the party filing the notice and filed thereafter with the court to which the appeal is taken.*'

729 of the scheme

"(Emphasis added.) ORS 19.270(2)(a), in turn, highlights the overall importance of the notice process in the scheme of appellate procedure. The statute makes clear that serving notice of an appeal is a jurisdictional requirement that cannot be waived or extended[.]

"\* \* \* \* \*

"In examining appellate notice in the context of mail service, however, it is important to recognize that ORS 19.260(2) only encompasses the fact that appellate notice can be accomplished by mail and that the date of service is the date of mailing. The statute does not set forth *how* notice must be accomplished.

"As noted above, ORS 19.500 expressly refers to ORCP 9 B as the source of law for the 'manner' in which a notice of appeal must be served. Among other things, ORCP 9 B requires that appeal notices served by mail be addressed to the party's or attorney's last known address[.]

"\* \* \* \* \*

"Several key points emerge from the statutes discussed above. The first, of course, is that serving the proper parties with a notice of an appeal is a jurisdictional requirement. For the purposes of ORS chapter 19, the Court of Appeals has no authority to consider a prospective appellant's appeal without such service. The second is that the statutory text that controls how such service must be accomplished is framed, for the most part, in mandatory terms. Under ORS 19.240, appeals 'shall be' taken by serving notices of appeal on the parties. Under ORS 19.500, such service 'shall be' performed in the manner provided by ORCP 9. And under ORCP 9, mail service—the type of service at issue here 'shall be' accomplished by mailing a copy of an appeal notice to the last known address of a party or the party's lawyer.

"When read together, the applicable statutes illustrate that the legislature intended to premise appellate jurisdiction under ORS chapter 19 on proper service of notice, and they also underscore the fact that the legislature created a mandatory procedure for effectuating such service. As part of that procedure, appeal notices served by mail must be addressed to a party or a lawyer's last known address. That did not occur in this case. Although ORCP 9 B provides that mail service of appellate notices are accomplished upon

mailing, this court's cases make clear that those mailings must nevertheless take place in the manner designated by statute. As this court stated in *Mullens*[, 312 Or at 605]:

> "'Under our statutory scheme, the timeliness of service of a notice of appeal is tested by the date on which the notice of appeal is *mailed in a manner permitted by statute, ORS [19.260], not by the date on which a responding party receives* the notice of appeal. That rule long has been a part of Oregon's procedural law.'

"(Emphasis added.) Here, when the state attempted mail service of its notice of appeal and failed to send the notice to what it undisputedly had known for more than a year was the last known address of plaintiffs' lawyers, the state failed to accomplish service in a manner permitted by statute. As a result, we hold that the Court of Appeals' decision to dismiss the state's appeal for failure to properly serve the notice on plaintiffs' lawyers was correct."

*McCall*, 339 Or at 193-96 (second ellipsis in original; footnote omitted; emphasis in original).

Although *McCall* involved the mailing of a notice of appeal by a permitted class of mail to an incorrect address, its reasoning equally applies to the present circumstances, where wife mailed husband's service copy by parcel post rather than a class of mail authorized by ORS 19.260(2). ORCP 9 B does not prescribe classes of mail for the service of papers in general. However, the breadth of that rule is circumscribed by ORS 19.260(2), which restricts service of notices of appeal to first class, registered, or certified mail. *See* ORS 19.500 (stating that, "[e]xcept as otherwise provided in this chapter," the paper "shall be served in the manner provided in ORCP 9 B"). In *McCall*, the Supreme Court stated that mail service "must * * * take place in the manner designated by statute." *McCall*, 339 Or at 195. Because wife did not mail the notice of appeal by one of those designated classes of mail, here, as in *McCall*, the notice of appeal was not mailed in a manner permitted by statute. It follows that wife failed to accomplish service of the notice of appeal by mail.

■ We explore one other possibility, namely, whether wife accomplished service of the notice of appeal by "delivery"

within the meaning of ORCP 9 B. The rule is phrased in the passive voice and, therefore, does not restrict who may deliver the paper to be served: "Service upon * * * a party shall be made by delivering a copy to such * * * party * * *." Thus, it is possible that a postal service representative could accomplish *delivery* within the meaning of ORCP 9 B, notwithstanding any defect in an attempt to *mail* the service copy. ORCP 9 B defines what "delivery" means for purposes of that rule:

> "Delivery of a copy within this rule means: handing it to the person to be served; or leaving it at such person's office with such person's clerk or person apparently in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at such person's dwelling house or usual place of abode with some person over 14 years of age then residing therein."

In this case, though, the postal service did not hand the envelope containing the service copy of the notice of appeal to husband.[2] Nor did anyone leave the envelope at husband's office with a "clerk" or person in charge of the office or "in a conspicuous place therein" or deliver it to husband's "dwelling house or usual place of abode" and leave it with a person over 14 years of age residing there. It follows that the postal service's deposit of the envelope containing the service copy of the notice of appeal in husband's post office box did not effect service by delivery under ORCP 9 B.

Because wife did not serve husband by mail in a manner authorized by ORS 19.260(2), nor accomplish delivery in a manner authorized by ORCP 9 B, we must dismiss her appeal from the judgment of dissolution for lack of jurisdiction.

Appeal of judgment of dissolution of marriage dismissed.

---

[2] Because we do not find that husband took physical possession of the service copy from his post office box within the 30-day appeal period, we have no present occasion to consider whether such actual receipt might constitute "handing" the service copy to husband within the meaning of ORCP 9 B.